S91A0142. WAFFLE HOUSE et al. v. DeKALB COUNTY et al.
(406 SE2d 477)

WELTNER, Justice.

We have reviewed the enumerations of error and the record on appeal. We are unable to find that the trial court's findings of fact are clearly erroneous under the principles enunciated in *Gradous v. Bd. of Commrs. of Richmond County,* 256 Ga. 469 (349 SE2d 707) (1986).

*Judgment affirmed. All the Justices concur, except Clarke, C. J., Smith, P. J., and Bell, J., who dissent.*

SMITH, Presiding Justice, dissenting.

We granted the appellants' application for a discretionary appeal in this case, *Trend Development Corp. v. Douglas County,* 259 Ga. 425 (383 SE2d 123) (1989), and asked the parties to address the following: "Whether the applicants failed to carry their burden of showing significant detriment as is required by *Gradous v. Board of Commissioners,* 256 Ga. 469 (349 SE2d 707) (1986)." I would find that the appellants carried their burden, and I would reverse.

The subject property is the only property at the intersection of Rockbridge and North Hairston Roads in DeKalb County that does not presently have a Commercial Retail land use designation (CRE) on the County's Land Use Plan. All of the CRE property at the intersection directly abuts residentially zoned property. The "Land Use Plan Analysis" prepared by the planning department staff states that there is no "alternative land use recommendation that would more exactly address this property on the Comprehensive Plan." The board of commissioners; however, changed the classification from residential to office professional (OPR).

The subject property consists of lot numbers 12, 13, and 14. The property was zoned R-100, but after the applicants sought to have the lots rezoned to a commercial classification, the board rezoned the lots to an Office-Institutional classification (O-I). Lot 12 abuts lot 11 on North Hairston Road (a residential lot that was not rezoned to the O-I classification), Lots 13, 14 and part of 12 abut lot 15 (rezoned O-I),

and lot 12 abuts parts of two lots in the newly developed Stonebridge Court subdivision. Stonebridge Court obtained re-zoning from R-100 to RA-5 and began development approximately four years ago. Stonebridge Court lies almost directly across Rockbridge Road (presently a two-lane road) from a 24-hour Amoco full-service gasoline station that sits on C-1 property.

The property diagonally across the intersection from the subject property is also zoned C-1, and a gasoline station and a restaurant could be located on that corner; however, at the present there is a C&S branch bank and directly behind the bank is a 24-hour Ingles grocery store, a Revco drug store, and approximately 15 other stores and shops. The C-1 corner was developed despite the fact that it was surrounded by residentially zoned property. To the south of the C-1 corner is a group of condominiums located on RA-8 property; to the southeast, across North Hairston Road, the property is zoned R-100; diagonally across the intersection lies the subject property that was zoned and used for single-family dwellings (R-100). A large portion of the property across Rockbridge Road to the north of the C-1 corner is zoned R-100 and used for single-family dwellings.

Directly across North Hairston Road from the subject property is a strip that was zoned for neighborhood shopping (NS) although it directly abuts single-family residential dwellings (R-100). The subject property was also being used for single-family dwellings at the time the property was re-zoned to NS. Some of the shops located in the NS strip are an insurance company, chiropractor, exercise salon, food market, pawn shop, restaurant, card shop, pizza shop, vacuum shop, and TV repair shop.

Across Rockbridge Road to the east of the subject property is the 24-hour Amoco station that is located on an island of C-1 property dropped in the middle of R-100 zoning. Stonebridge Court was developed despite its close proximity to the 24-hour Amoco station.

An expert witness testified that the intersection would be described as a

> commercial activity node . . . it's a very busy, high traffic area [19,000 vehicles travel on Rockbridge and 21,000 on North Hairston each day] and it is impacted by commercial uses almost all around except for one quadrant [the subject property], and then it phases down into other uses around the site. This, in planning parlance, is known as a commercial activity node . . . [and the only portion of the intersection that is out of character with the actual use of the intersection is the subject property. It] is out of character . . . both in terms of land use, existing land use, zoning designation, and land use plan classification.

[When asked about the subject property abutting the residential property, the expert responded:] Immediately adjacent to the property for two and a half of the three lots is an O and I District. The only immediately residential area adjacent to the subject sites are two residential districts adjacent to the back of the northerly lot and to the north of the northerly lot. And if you were to look all over the DeKalb County many, including areas around here, you will typically find R-100 uses immediately adjacent to commercial uses. This is a common land use juxtaposition and, in fact, the DeKalb County Zoning Ordinance lists the buffer requirements which are specifically required in anticipation of that juxtaposition.

This same witness testified that the residential property could be adequately buffered from the proposed commercial use.

No one disputes that the subject property will be difficult to develop; the trial court specifically found that the property will be difficult to develop "under any circumstances." There was testimony that the property will be even more difficult to develop when the roads are widened at the intersection from two to five lanes; a median will divide the traffic flow. Once the median is in place, the residential property near the subject property, as well as the subject property, will be difficult to reach as the median will prevent left turns.[1]

There was testimony that the taking for the road-widening will greatly reduce the size of the lots adding to development difficulties. Property located to the north of the subject property had been listed for sale as O-I for approximately one year without any response. When the subject property was listed, it was "immediately" placed under contract with Phillips 66 and Waffle House.

There was speculative testimony that the property could be used as a branch bank or a day care center; however, there was also testimony that while the uses might be feasible, they were not practical. One expert testified that although he felt the property was not large enough for a branch bank, someone could attempt to, "put in a small drive-in with two bays, isolated bays; that conceivably could be done." One expert opined that there was no reason to believe that the C&S branch located diagonally across the intersection would remain after the road was widened, and that the proposed median would

---

[1] Despite protests, a median was built on Memorial Drive from I-285 eastward to Stone Mountain Park. The median has been blamed for the large numbers of stores, shops, and offices that have closed on that part of Memorial Drive. Left turns are now impossible, and U-turns are allowed only at the traffic lights. The median on Jimmy Carter Boulevard has been blamed for a large number of business closings. We take judicial notice that medians do drastically change an area, by preventing left turns.

"certainly restrict[] the use of a drive-in facility." There was also testimony that if an office was built on the property it would "lose money," and that the site could not be economically developed for office purposes. With regard to the possibility of a day care center being located on the subject property the court heard one expert state that after driving to the site at 8:30 one morning he "decided that [he] wouldn't want a child to be subjected to that kind of traffic intensity."

Although at least two variances would be required to develop the property as proposed, there was evidence that property could not be developed under the O-I category without variances.

On appeal, this Court considers the trial court's findings and the record below; the findings will not be disturbed unless they are clearly erroneous; however, the appellate courts determine the rules of law and are in no way bound by such determinations below. *City of Roswell v. Heavy Machines Co.*, 256 Ga. 472, 474 (349 SE2d 743) (1986).

The trial court erred by using an incorrect legal standard in finding that the plaintiffs suffered no significant detriment. The trial court's conclusions of law can be summarized as follows: the evidence that the property will be worth more under the proposed zoning does not show a significant detriment, the evidence that the property will be "difficult to develop under any circumstances" does not prove significant detriment, the proposed site plan would require variances,[2] and there was "insufficient evidence that the property was not developable or marketable under the existing zoning and land use designation. Accordingly, plaintiffs failed to show a significant detriment caused by the existing zoning and land use designation."

The trial court used too stringent a standard. Georgia has never required property to be totally useless as zoned, all that is necessary is that the damage to the owner is significant and it is not justified by the benefit to the public. *Guhl v. Holcomb Bridge Rd. Corp.*, 238 Ga. 322, 323 (232 SE2d 830) (1977). This Court has acknowledged that even though property can be used as zoned, a significant detriment can be shown despite the fact that there may be some use for the property as zoned. While suitability of the property for the zoned purpose may be considered as a factor in the trial court's determination, it is not the decisive factor. In *Sellars v. Cherokee County*, 254 Ga. 496 (330 SE2d 882) (1985), the plaintiff showed a significant detriment despite the fact that he admitted "that while the property could be used for residential purposes, the property was not desirable for use as zoned." Id.

---

[2] The evidence showed that variances would be required if the property was developed under the O-I classification.

This Court in *Jones v. City of Atlanta*, 257 Ga. 727, 728-729 (363 SE2d 254) (1988) re-stated and clarified the steps required to prove an unconstitutional deprivation.

A successful appellant must have suffered an unconstitutional deprivation or "taking" due to the zoning classification of his property. *Gradous*, supra. In determining whether the appellant has suffered an unconstitutional deprivation, we begin with the proposition that a zoning ordinance is presumptively valid. The challenger to the validity of the ordinance has the burden to present clear and convincing evidence that he has suffered a significant detriment which is unsubstantially related to the public health, safety, morality and welfare. Once the challenger meets this initial burden, the governing authority may justify the existing zoning as reasonably related to the public interest. *Gradous*, supra at 471; see also *Brown v. Dougherty County*, 250 Ga. 658 (300 SE2d 509) (1983); *Flournoy v. City of Brunswick*, 248 Ga. 573 (285 SE2d 16) (1981); *DeKalb County v. Flynn*, 243 Ga. 679 (256 SE2d 362) (1979).

*Brown*, supra at 660, makes it clear that a plaintiff's initial burden is measured by using the lines of inquiry in *Guhl v. Holcomb Bridge Rd. Corp.*, supra, 238 Ga. at 322, and *Guhl v. M.E.M. Corp.*, 242 Ga. 354 (249 SE2d 42) (1978). This Court in *Flournoy*, supra, 248 Ga. at 573, stated:

A local governmental body enjoys an initial presumption that its zoning decisions are valid. *DeKalb County v. Flynn*, 243 Ga., [supra]. However, this presumption may be overcome by the plaintiff showing, with clear and convincing evidence, that the zoning is significantly detrimental to him and is insubstantially related to the public health, safety, morality, and welfare. *DeKalb County v. Flynn*, supra; *Guhl v. M.E.M. Corp.*, 242 Ga.[, supra at] 355. If the property owner carries this burden then the city must come forward with evidence justifying the zoning, i.e., it must show the zoning is reasonably related to the public health, safety, morality, or general welfare. *DeKalb County v. Flynn*, supra, p. 680. . . .

"The test for determining whether the application of local zoning to a particular piece of property is unconstitutional is set out in *Barrett v. Hamby*, 235 Ga. 262 (219 SE2d 399) (1976), and in *Guhl v. Holcomb Bridge Rd. Corp.*, [supra]." *Bobo v. Cherokee County*, 248 Ga. 554, 555 (285 SE2d 177) (1981). A property owner "is entitled to have the application scrutinized in light of the character of the land in ques-

tion and the impact of the zoning decision upon property owners' rights. A failure to afford this scrutiny under the facts in evidence amounts to a denial of due process. *Bobo v. Cherokee County*, 248 Ga. [, supra]." *Sellars v. Cherokee County*, supra, 254 Ga. at 496.

When the subject property was zoned R-100 and used as single-family dwellings, the property diagonally across the intersection and directly across the street were developed as commercial properties. The C-1 property located across Rockbridge and diagonally across the intersection could presently be used for a Phillips 66 station and a Waffle House. Currently, a full-service Amoco station is located across Rockbridge Road. The commercial properties at the other three quadrants of the intersection abut residential property. During the time the subject property was zoned R-100, commercial development surrounded it on almost every side, and the R-100 zoning to the east was lowered to RA-5 so that Stonebridge Court could be developed. The owners of the subject lots have been forced to share the burden of the commercial development at this busy intersection and are now being denied the benefit.

An expert who was hired by DeKalb County testified that the "highest and best use of the subject property is for zoning as C-1 property and development." This Court has acknowledged that the highest and best use of property can be an important factor in deciding whether or not a zoning classification is valid. *Cobb County v. Shapiro*, 251 Ga. 55, 56 (303 SE2d 10) (1983); *DeKalb County v. Flynn*, supra, 243 Ga. at 680. Additionally this Court has stated that DeKalb County "has the duty and obligation to work with property owners to allow them the highest and best use of their property." Id. Even if the property may have some use as zoned, there may still be a substantial detriment to the owner. *Barrett v. Hamby*, supra, 235 Ga. at 266; *Sellars v. Cherokee County*, supra, 254 Ga. at 496-498.

I believe that the appellants have shown a significant detriment. The appellants' evidence proved that the other quadrants were developed commercially at a time when they were virtually surrounded with property that was zoned R-100 and being used as single-family dwellings. The property across Rockbridge Road is zoned C-1 and is used as a gasoline station; the property diagonally across the intersection is zoned C-1 and could be used for a gasoline station and a restaurant. Property across North Hairston is zoned NS and included in the strip are several eating establishments. The road widening and the median will have a tremendous impact on the property.

The trial court found that the property will be difficult to develop under any circumstances. There is a buyer ready, willing, and able to develop the property with adequate buffers between the subject property and the residential property. Because the appellants have shown a significant detriment, I would reverse the trial court.

I am authorized to state that Chief Justice Clarke and Justice Bell join in this dissent.

DECIDED MAY 28, 1991 —
RECONSIDERATION DENIED JUNE 19, 1991.

*Peterson, Dillard, Young, Self & Asselin, Dick Wilson, Jr., Carlton M. Henson II, Thomas O. Marshall, Joel L. Larkin,* for appellants.

*Johnson & Montgomery, Albert Sidney Johnson, Patrick F. Henry, Susan Cole Mullis,* for appellees.